IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | |
|---|---|
| MARCUS HENDRIK KAARMA, | NO. 9:21-CV-0075-TOR |
| Petitioner, | ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS |
| v. | |
| JIM SALMONSEN, Warden, Montana State Prison, Deer Lodge; and ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

BEFORE THE COURT is Petitioner Marcus Hendrik Kaarma's Petition for

Writ of Habeas Corpus.  Doc. 1.  Petitioner, a prisoner now housed at the Montana

State Prison, Deer Lodge, is proceeding *pro se*.  Respondents are represented by

Assistant Attorney Generals Michael P. Dougherty and Jonathan M. Krauss.

Respondents have answered the Petition and filed relevant portions of the state

court record.  Docs. 16, and 16-1 through 16-102.  Petitioner sought an extension

of time to file his reply, which was granted by the Court and which allowed him to

serve and file his reply on or before February 25, 2022. Docs. 19, 21. On

November 24, 2021, Petitioner filed a one-page Reply to Respondents' Answer.

Doc. 22. Petitioner filed nothing further. The Court has reviewed the record and

files herein and is fully informed. For the reasons discussed below, Marcus

Hendrik Kaarma's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

## BACKGROUND

On June 17, 2021, Petitioner filed a Petition for Writ of Habeas Corpus.

Doc. 1. Mr. Kaarma is challenging his Fourth Judicial District Court, Missoula

County jury conviction for deliberate homicide. Doc. 1-1. The underlying facts

and procedural history, summarized by the Montana Supreme Court on direct

appeal, are as follows:

> In April 2014, the Missoula, Montana, home Kaarma and his partner
> Janelle Pflager (Pflager) shared with their infant son was burglarized
> two times. Each time the burglar entered the garage through the
> partially open garage door. Concerned about safety, Kaarma and
> Pflager installed security cameras in and around their garage, changed
> how they parked their cars, started locking the doors to the house,
> created a perimeter to discourage entrance into the garage, encouraged
> their neighbors to do the same, and placed a purse with identifying
> information in the garage. Kaarma was vocal about his anger
> regarding the burglaries and his perception that the police were not
> "dealing with the situation." Several witnesses testified that Kaarma
> told them he was "up the last three nights with a shotgun wanting to
> kill some kids," that "he was going to shoot [the burglars]," and "he
> was not kidding, [the witnesses] were going to see this on the news."
> Witnesses testified that Pflager knew the burglars would come back
> because "we are going to bait them," and that their guns were loaded.
> Kaarma and Pflager testified to "living in fear" about the burglaries
> and decided to be "a little proactive."

In the early morning hours of April 27, 2014, Kaarma and Pflager were at home. Pflager left the garage door partially open to air out after smoking a cigarette. While inside the home, Kaarma and Pflager saw on the security camera an intruder enter their attached garage. The intruder was well into the garage and "jiggling" the car handles. Kaarma took his shotgun, walked out the front door of the home, turned and stood in front of the partially open garage door. Kaarma testified that he shouted into the garage and a voice or "metal on metal" sound came from inside the garage. He testified he thought he was "going to die," then "aimed high," fumbled with the shotgun, and discharged four shots into his garage in a sweeping motion from right to left. Shotgun pellets sprayed the inside garage wall, and several penetrated the home causing damage. The intruder was shot twice, once in the arm and once in the head. The intruder, later identified as Diren Dede, died as a result of his injuries.

Kaarma was charged with deliberate homicide. A trial was conducted in Missoula County beginning on December 1, 2014. The jury found Kaarma guilty of deliberate homicide. On February 12, 2015, the District Court sentenced Kaarma to seventy years in the Montana State Prison.

*State v. Kaarma*, 386 Mont. 243, 245–46, 390 P.3d 609, 614–15 (2017).  Kaarma

raised five issues on appeal as follows:

Issue One: Did the District Court abuse its discretion by instructing the jury on justifiable use of force in defense of a person?

Issue Two: Did the District Court abuse its discretion when it denied Kaarma's motions to change venue based on pretrial publicity?

Issue Three: Did the District Court abuse its discretion when it declined to remove a prospective juror for cause based on her marriage to a former police officer?

Issue Four: Did the District Court abuse its discretion when it admitted evidence of Kaarma's prior assault on Pflager?

Issue Five: Did the District Court abuse its discretion when it allowed lay opinion testimony regarding blood spatter evidence?

*Id*. at 386 Mont. 243, 390 P.3d 614.

The Montana Supreme Court affirmed Petitioner's conviction for deliberate homicide. *Id*. at 386 Mont. at 266, 390 P.3d at 627. Mr. Kaarma filed a petition for rehearing, which was denied. Mr. Kaarma then filed a petition for a writ of *certiorari* at the United States Supreme Court, which was also denied. *Kaarma v. Montana*, 138 S. Ct. 167 (2017).

On September 18, 2018, Mr. Kaarma filed a Petition for Post-Conviction Relief in the state District Court. Doc. 16-80. On July 26, 2019, the state District Court denied Mr. Kaarma's Petition. Doc. 16-96. Mr. Kaarma appealed to the Supreme Court of Montana. On June 8, 2021, the Supreme Court of Montana affirmed the District Court's denial of Mr. Kaarma's Petition. Doc. 1-1 at 19-31.

Mr. Kaarma then filed this timely federal 28 U.S.C. § 2254 habeas petition on June 17, 2021, alleging ten grounds for relief:

(1) Ineffective assistance of counsel for failing to object to the defense of person instruction which omitted the critical element allowing use of deadly force to prevent the commission of a forcible felony and counsel "telling the jury it does not apply to this case."

(2) Denial of due process when District Court failed to instruct the jury that burglary is a forcible felony.

(3) Ineffective assistance of counsel by failing to object to State's arguments against defense of person and defense of property.

(4) Ineffective assistance of counsel by failing to raise the issue of failure to properly instruct on defense of person and failing to object to inappropriate argument of the State.

(5) Denial of due process when the District Court denied motions to change venue because of prejudicial pretrial publicity.

(6) Denial of due process when the District Court refused to excuse a juror for cause.

(7) Denial of due process when District Court allowed otherwise inadmissible testimony relating to an assault allegedly committed by Mr. Karma against his partner.

(8) Denial of due process when District Court allowed admission of blood splatter testimony which was not previously disclosed to the defense.

(9) Denial of due process (and Sixth Amendment) when District Court instructed the jury on defense of person in addition to defense of an occupied structure.

(10) Denial of fair trial where a number of errors cumulatively prejudiced Mr. Kaarma.

Doc. 1 at 9-26.

Respondents concede that Petitioner has exhausted his state remedies on claims 1, 3, 4, 5, and 9, pursuant to 28 U.S.C. § 2254(b).  Doc. 16 at 31. Respondents contend Petitioner failed to exhaust his state court remedies on claims 2, 6, 7, and 8, and therefore he has procedurally defaulted those claims.  *Id*. Petitioner has failed to show cause and prejudice or actual innocence to excuse his procedural default of those claims, so Respondents contend those claims must be dismissed with prejudice.  *Id*.  Respondents contend that claim numbered 10 fails

to state a cognizable claim for habeas relief and even if it raises an exhausted claim, it too should be denied and dismissed with prejudice. *Id.*

The parties are familiar with all the intricate facts of the case which will not be repeated here. The record contains all the essential details in the Respondents' thorough Answer and voluminous attachments. Docs. 16; 16-1 through 16-102.

## DISCUSSION

A court will not grant a petition for a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court proceedings unless the petitioner can show that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Section 2254(d) sets forth a "highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citation omitted).

## I. No Evidentiary Hearing Required

28 U.S.C. § 2254 requires the Court to consider the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). As to factual determinations, the Supreme Court has instructed that "review under § 2254(d)(1) is limited to the

record that was before the state court that adjudicated the claim on the merits."

*Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  This means that evidence not

presented to the state court may not be introduced on federal habeas review if a

claim was adjudicated on the merits in state court and if the underlying factual

determinations of the state court were reasonable.  *See Murray v. Schriro*, 745 F.3d

984, 999-1000 (9th Cir. 2014) ("After *Pinholster*, a federal habeas court may

consider new evidence only on *de novo* review, subject to the limitations of

§ 2254(e)(2).").  Two separate statutory subsections govern a federal court's

review of state court factual findings:

> Factual determinations by state courts are presumed correct absent
> clear and convincing evidence to the contrary, § 2254(e)(1), and a
> decision adjudicated on the merits in a state court and based on a
> factual determination will not be overturned on factual grounds unless
> objectively unreasonable in light of the evidence presented in the
> state-court proceeding, § 2254(d)(2).

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citation omitted); *see also Schriro

v. Landrigan*, 550 U.S. 465, 473–74 (2007).  Importantly, a "state-court factual

determination is not unreasonable merely because the federal habeas court would

have reached a different conclusion in the first instance."  *Wood v. Allen*, 558 U.S.

290, 301 (2010).  "The question under AEDPA [Antiterrorism and Effective Death

Penalty Act] is not whether a federal court believes the state court's determination

was incorrect but whether that determination was unreasonable—a substantially

higher threshold." *Schriro v. Landrigan*, 550 U.S. at 473 (bracket added).

Accordingly, this Court finds no evidentiary hearing is required in light of the evidence presented in the state court proceeding and the relevant and material facts upon which this Court relies.

## II.   EXHAUSTION

The federal courts are not to grant a writ of habeas corpus brought by a person in state custody pursuant to a state court judgment unless "the applicant has exhausted the remedies available in the courts of the State." *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008), citing 28 U.S.C. § 2254(b)(1)(A).  This exhaustion requirement is "grounded in principles of comity" as it gives states "the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Wooten*, 540 F.3d at 1023, (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)).

A claim must be "fully and fairly" presented to the state's highest court so as to give the state courts a fair opportunity to apply federal law to the facts. *Anderson v. Harless*, 459 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270, 276-78 (1971).  Each claim must be presented to the state's highest court based upon the same federal legal theory and the same factual basis as the claim is subsequently asserted in federal court.  *Hudson v. Rushen*, 686 F.2d 826, 829-30 (9th Cir. 1982).

Here, Petitioner sought review by the Montana Supreme Court, for at most, only six issues.  Accordingly, this Court only has jurisdictional authority to review those six claims.  All other claims presented are hereby denied.

## III.   Standard of Review

A rule is "clearly established Federal law" within the meaning of section 2254(d) only if it is based on "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions."  *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)).  A state court's decision is contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."  *Early v. Packer*, 537 U.S. 3, 8 (2002) (internal quotation marks omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).  The state court need not cite to the controlling Supreme Court precedent, nor need it even be aware of the relevant case law, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Id.*  "[A]n unreasonable application of" clearly established federal law is one that is "objectively unreasonable, not merely wrong; even clear error will not suffice."  *White*, 572 U.S. at 419 (internal quotation marks and citation omitted).  Of utmost importance, circuit precedent

may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam).

In order to obtain a writ of habeas corpus, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 572 U.S. at 419-20 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  Under the harmless error standard of review adopted by the Supreme Court, even if a reviewing court finds constitutional error, the challenged error must have caused "actual prejudice" or had "substantial and injurious effect or influence" in determining the jury's verdict in order for the court to grant habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).

> If [the section 2254(d)] standard is difficult to meet, that is because it was meant to be …. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no further.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington*, 562 U.S. at 102–03 (citations omitted).

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 10

The petitioner bears the burden of showing that the state court decision is contrary to, or an unreasonable application of, clearly established precedent. *See Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). In conducting its habeas review, a federal court looks "to the last reasoned decision of the state court as the basis of the state court's judgment." *Merolillo v. Yates*, 663 F.3d 444, 453 (9th Cir. 2011) (citation omitted). A rebuttable presumption exists: "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Wilson v. Sellers*, 138 S.Ct. 1188 (2018).

### a. Standard of Review for Ineffective Assistance of Counsel

A defendant in criminal proceedings has a constitutional right to effective assistance of counsel. U.S. Const. amend. VI. A defendant asserting violation of his constitutional right to effective assistance of counsel must demonstrate the following: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kimmelman v. Morrison*, 477 U.S. 365, 374–75 (1986) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). Regarding the first prong, a "tactical decision about which competent lawyers might disagree" does

not qualify as objectively unreasonable. *Bell v. Cone*, 535 U.S. 685, 702 (2002). "Judicial scrutiny of a counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689. Additionally, habeas courts must be deferential not only to the decisions of defense counsel, but also to the decisions of the state courts as required under 28 U.S.C. § 2254(d)(1). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (doubly deferential judicial review applies to a *Strickland* claim evaluated under the § 2254). Moreover, the Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." *Id*.

### b. Standard of Review for Due Process Violation

A due process challenge to a trial court's instructions must demonstrate that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Drayden v. White*, 232 F.3d 704, 714 (9th Cir. 2000) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

### c. Due Process Violation, Cumulative Error

Under traditional due process principles, cumulative error warrants habeas relief only where the errors have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416

U.S. 637, 643 (1974).  Such "infection" occurs where the combined effect of the errors had a "substantial and injurious effect or influence on the jury's verdict." *Brecht*, 507 U.S. at 637 (internal quotations omitted).  In simpler terms, where the combined effect of individually harmless errors renders a criminal defense "far less persuasive than it might [otherwise] have been," the resulting conviction violates due process.  *See Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *see also Parle v. Runnels*, 505 F.3d 922, 927-28 (9th Cir. 2007).

## IV.   Discussion

### Claim 1:  Ineffective Assistance of Counsel—Failure to Object to Jury Instruction

Petitioner contends that he received ineffective assistance of counsel when his lawyers failed to object to the defense of person instruction which omitted allowing the use of deadly force to prevent the commission of a forcible felony. Doc. 1 at 9-11.  Petitioner contends that his counsel ineffectively abandoned the defense of person theory in favor of defense of an occupied structure.

At the jury instruction settlement conference, Petitioner's attorneys sought to withdraw the defense of person instruction in favor of the defense of occupied structure instruction, contending that they have different elements to prove. Petitioner now contends that his attorneys were ineffective by failing to object and by telling the jury that the defense of person instruction did not apply.

The trial court, in fact, instructed the jury on both defenses; defense of person and defense of occupied structure. Ex. 45 at Instr. 25, 28. The defense of occupied structure instruction includes allowing the use of force to prevent a forcible felony in the occupied structure. Instr. 28 ("a person is justified in the use of force likely to cause death or serious bodily harm only if: [1] the entry is made or attempted and he reasonably believes that the force is necessary to prevent an assault upon himself or another then in the occupied structure; OR [2] he reasonably believes that the force is necessary to prevent the commission of a forcible felony in the occupied structure."). The term "forcible felony" was fully defined to the jury in Instruction 29.

The Montana Supreme Court determined that the instructions given were a full and fair instruction on the applicable law of the case. *Kaarma*, 386 Mont. at 250-51, 390 P.3d at 617. It found that the instructions were supported by either direct evidence or some logical inference from the evidence presented at trial. *Id*. Accordingly, the trial court did not abuse its discretion. *Id*. The instructions allowed Petitioner to present his theory that he was justified in his use of deadly force. Doc. 1-1 at 26. Moreover, Instruction 31(b) informed the jury that the use of deadly force is limited to cases in which the force imminently threatened apparently will cause death or serious bodily harm, or in which a violent offense is being committed which in its nature involves some serious risk of serious bodily

harm such as rape, robbery, burglary, arson or kidnapping.

Petitioner's counsel did not object to the absence of an instruction on use of force to prevent a forcible felony because that instruction was in fact given.  Instr. 28.  Thus, Petitioner's counsel was fully able to argue the Petitioner's theory of the case and was not ineffective.

Accordingly, this Court finds the Montana Supreme Court's conclusions were neither an unreasonable determination of the facts nor an unreasonable application of the clearly established constitutional law.

**Claim 2:  Denial of Due Process for Failure to Instruct Jury that Burglary is a Forcible Felony**

Petitioner contends that the district court denied him due process when it refused to instruct that burglary is a forcible felony which would have allowed Petitioner to argue that his use of deadly force was justified.  Doc. 1 at 11-14. Petitioner explains that his attorneys proposed a proper instruction, but the district court rejected it, thus, he contends that his due process rights were violated.

Petitioner did not raise a due process violation concerning the failure to instruct that burglary is a forcible felony.  *See Hudson v. Rushen*, 686 F.2d 826, 829-30 (9th Cir. 1982) ("Each claim must be presented to the state's highest court based upon the same federal legal theory and the same factual basis as the claim is subsequently asserted in federal court.").  Accordingly, that issue has not been

properly exhausted and is therefore denied.  Even if it was determined that the issue was exhausted because he merely argued that the instruction should have been given, the Montana Supreme Court properly resolved the issue.  It held that not all burglaries are forcible felonies.  *See* Doc. 1-1 at 28.  "The District Court properly instructed the jury on the definitions of both 'burglary' and 'forcible felony' and then let the jury determine whether the facts of the case met the definitions."  *Id*.  With these instructions, the Petitioner was free to argue that the burglary constituted a forcible felony thereby justifying his use of deadly force.  Accordingly, no due process violation occurred here.

### Claim 3:  Ineffective Assistance of Counsel—Failure to Object to State's Arguments Against Defense of Person and Defense of Property

Petitioner contends that his counsel was ineffective for failing to object to several statements made by prosecutors during closing argument.  Doc. 1 at 15-16.

The Montana Supreme Court explained that Petitioner "has failed to demonstrate, however, that further objections by his counsel would have been sustained by the District Court or that counsel's failure to object fell below an objective standard of reasonableness and was outside the wide range of reasonable professional assistance."  Doc. 1-1 at 26.  The prosecutor's argument appears to be well within the bounds of "argument" and Petitioner has not shown any error, let alone ineffective assistance of counsel.

**Claim 4:  Ineffective Assistance of Counsel—Failure of Appellate Counsel to Raise Improper Jury Instructions on Appeal or Argument of the Prosecution**

Petitioner contends that his counsel failed to raise on appeal the issue of improper jury instruction on defense of person and the inappropriate argument of the prosecution.  Doc. 1 at 17.  Petitioner provides no argument or context for this claim.

The Montana Supreme Court ruled on the substance of these arguments in claims 1 through 3 above.  No error has been shown, let alone Constitutional error.

**Claim 5:  Denial of Due Process for Failure to Change Venue**

Petitioner contends that the district court denied him due process when it denied his motions to change venue.  Doc. 1 at 17-22.  Petitioner exhausted this issue on direct appeal with the Montana Supreme Court.

To support a change of venue request, the defendant must establish either presumed or actual prejudice.  *Murray v. Schriro*, 882 F.3d 778, 802 (9th Cir. 2018) (citation omitted).  The Supreme Court has explained that a court may presume prejudice only when the "trial atmosphere is utterly corrupted by press coverage,", or when "a wave of public passion . . . makes a fair trial unlikely by the jury . . ." *Id*. (citations and brackets omitted).  Juror exposure to news reports of a crime—even "pervasive, adverse publicity"—is not enough alone to trigger a

presumption of prejudice to the defendant's due process rights.  *Id.* (citation

omitted).  For habeas relief under AEDPA, the Montana Supreme Court's decision

must be contrary to or an unreasonable application of Supreme Court precedent.

The Montana Supreme Court comprehensibly considered the issue and

concluded that the District Court did not abuse its discretion when it denied

Petitioner's motions for change of venue.  *Kaarma*, 386 Mont. at 251-58.  The

Supreme Court noted that jurors had seen the media reports but would form their

opinions based on the facts.  *Id.* at 253.  Without repeating the entire analysis, the

Supreme Court held:

> While publicity surrounding the case was significant, we do not agree
> that it was so inflammatory or so prejudicial that a community
> member could not ignore it or that it invited prejudgment of Kaarma's
> culpability significant enough to grant a change of venue.
>
> * * *
>
> To ensure Kaarma received a fair trial here the District Court sealed
> and closed the M. R. Evid. 404(b) proceedings, ordered an enhanced
> jointly created jury questionnaire, issued a "gag" order and protective
> order, ensured liberal excusals on stipulation of the parties, and
> allowed a full two-day voir dire process.  Additionally, the District
> Court conducted individual voir dire after the media published an
> article about the castle doctrine and excused a juror mid-trial whose
> spouse had been discussing the case.
>
> Kaarma has not proven the pretrial publicity was so pervasive and
> prejudicial that the District Court was required to change the venue.
> Publicity may be wide spread, but communities are rarely listening
> closely.  The questionnaire tally showed almost 90% of polled
> potential jurors indicated they had heard of the criminal charges
> against Kaarma, and 26% had heard enough to be unable to render a
> neutral verdict.  Obviously, these jurors were excused prior to the

commencement of the trial. Here, the District Court, in response to Kaarma's assertions of prejudice, used the tools available to it, the questionnaire and voir dire. To ensure Kaarma received a fair trial the District Court's use of the questionnaire and voir dire was appropriate.

*Id*. at 256-57.

The Montana Supreme Court's determination that prejudice could not be presumed was not contrary to or an unreasonable application of Supreme Court precedent.  This claim is denied.

**Claim 6:  Denial of Due Process for Failure to Strike a Juror**

Petitioner contends that the district court denied him due process when it refused to excuse a juror for cause.  Doc. 1 at 22-23.  Respondents contend Petitioner has not properly exhausted this issue and it should be dismissed.

Prior to trial the District Court ordered that "any prospective juror who is in law enforcement, or related to anyone in law enforcement in the following manner: spouse, child, or parent, will be automatically excused from the jury panel."  Juror Kathryn Hughes' (Hughes) husband was both the former chief of police for Hamilton, Montana, and assistant chief of police for Missoula, Montana.  She also knew a state witness and lead investigator on the case, Detective Guy Baker (Baker) as a young child.  During the two days of voir dire Hughes affirmed that irrespective of her associations, her ability to be impartial was absolute, stating, "I think I have a fair mind and I can make up my own mind."  Hughes husband had been retired for over twenty years.

Petitioner sought to remove Hughes for cause, but the District Court denied the request.  Petitioner then used a peremptory challenge to remove Hughes from the jury.  *Kaarma*, 386 Mont. at 259.

Petitioner did not "fully and fairly" present a constitutional claim to the Montana Supreme Court so as to give it a fair opportunity to apply federal law to the facts.  *See Anderson v. Harless*, 459 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270, 276-78 (1971).  Since the claim was not presented to the state's highest court based upon the same federal legal theory and the same factual basis as the claim is asserted here, it has not been properly exhausted and must be dismissed.

Even if the issue were exhausted, it must be denied.  The Supreme Court has "long recognized that peremptory challenges are not of constitutional dimension." *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988).  "They are a means to achieve the end of an impartial jury.  So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated."  *Id*.; s*ee also United States v. Martinez-Salazar*, 528 U.S. 304, 317 (2000) (defendant's exercise of peremptory challenge to remove a juror who should have been excused for cause does not constitute a Fifth Amendment due process violation).

Accordingly, this claim is denied.

**Claim 7:  Denial of Due Process when District Court allowed Testimony of an Assault to Rebut Good Character Evidence**

Petitioner contends that the district court denied him due process when it allowed the State to introduce testimony relating to an assault allegedly committed by Petitioner.  Doc. 1 at 23-24.  Respondents contend Petitioner has not properly exhausted this issue and it should be dismissed.

Petitioner did not "fully and fairly" present a constitutional claim to the Montana Supreme Court so as to give it a fair opportunity to apply federal law to the facts.  *See Anderson v. Harless*, 459 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270, 276-78 (1971).  Since the claim was not presented to the state's highest court based upon the same federal legal theory and the same factual basis as the claim is asserted here, it has not been properly exhausted and must be dismissed.

The Montana Supreme Court ruled on the evidentiary admissibility of the evidence and found the District Court did not abuse its discretion.  *Kaarma*, 386 Mont. at 260-61.  Kaarma opened the door to his good character; the State then had the right to present bad character evidence to rebut it.

Accordingly, this claim is denied.

**Claim 8:  Denial of Due Process by Allowing Detective Baker's Expert Opinion Testimony**

Petitioner contends that the district court denied him due process when it

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 21

allowed blood splatter testimony which was not previously disclosed.  Doc. 1 at 24-25.  Respondents contend Petitioner has not properly exhausted this issue and it should be dismissed.

Detective Baker testified at trial regarding his personal observations of the blood patterns in Kaarma's garage and his interpretation about where Kaarma was standing when the shooting occurred.  Kaarma objected multiple times during the testimony, asserting Baker was offering expert testimony as a lay witness and the defense did not secure a rebuttal witness, resulting in prejudice.  The Montana Supreme Court held Detective Baker's opinion was not proper under M. R. Evid. 701.  *Kaarma*, 386 Mont. 264.  However, it also held there was no prejudicial error because the testimony was cumulative of other witness testimony.  *Id*. at 265.

Petitioner did not "fully and fairly" present a constitutional claim to the Montana Supreme Court so as to give it a fair opportunity to apply federal law to the facts.  *See Anderson v. Harless*, 459 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270, 276-78 (1971).  Since the claim was not presented to the state's highest court based upon the same federal legal theory and the same factual basis as the claim is asserted here, it has not been properly exhausted and must be dismissed.

Moreover, no prejudice has been shown as the testimony was cumulative of other witness testimony.  Accordingly, this claim is denied.

**Claim 9: Denial of Due Process by Instructing on Defense of Person When that Was Not His Defense Theory**

Petitioner contends that the district court denied him due process when it instructed the jury on defense of person over his objection. Doc. 1 at 25-26.

Petitioner's argument is a corollary to his claim numbered 1, above. The trial court, in fact, instructed the jury on both defenses; defense of person and defense of occupied structure. Ex. 45 at Instr. 25, 28. The defense of occupied structure instruction includes allowing the use of force to prevent a forcible felony in the occupied structure. Instr. 28 ("a person is justified in the use of force likely to cause death or serious bodily harm only if: [1] the entry is made or attempted and he reasonably believes that the force is necessary to prevent an assault upon himself or another then in the occupied structure; OR [2] he reasonably believes that the force is necessary to prevent the commission of a forcible felony in the occupied structure."). The term "forcible felony" was fully defined to the jury in Instruction 29.

The Montana Supreme Court determined that the instructions given were a full and fair instruction on the applicable law of the case. *Kaarma*, 386 Mont. at 250-51, 390 P.3d at 617. It found that the instructions were supported by either direct evidence or some logical inference from the evidence [both parties] presented at trial. *Id*. Accordingly, the trial court did not abuse its discretion. *Id*.

The instructions allowed Petitioner to present his theory that he was justified in his use of deadly force.  Doc. 1-1 at 26.  Moreover, Instruction 31(b) informed the jury that the use of deadly force is limited to cases in which the force imminently threatened apparently will cause death or serious bodily harm, or in which a violent offense is being committed which in its nature involves some serious risk of serious bodily harm such as rape, robbery, burglary, arson or kidnapping.  Thus, Petitioner's counsel was fully able to argue the Petitioner's theory of the case and no due process violation occurred.  Petitioner has failed to show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Drayden v. White*, 232 F.3d 704, 714 (9th Cir. 2000)

Accordingly, this Court finds the Montana Supreme Court's conclusions were neither an unreasonable determination of the facts nor an unreasonable application of the clearly established constitutional law.

### Claim 10:  Denial of Fair Trial by Cumulative Error

Petitioner contends that the district court denied him a fair trial when a number of errors, taken together, cumulatively prejudiced his case.  Doc. 1 at 26. Respondents contend that Petitioner fails to state a cognizable claim for habeas relief and even if it raises an exhausted claim, it too should be denied and dismissed with prejudice.  Doc. 16 at 31.

Petitioner only raised cumulative error with respect to a few of his

ineffective assistance of counsel arguments in his Petition for Post-Conviction Relief.  Docs. 16-82 at 19 (one sentence); 16-98 at 68-69 (brief to Montana Supreme Court).  Petitioner did not "fully and fairly" present all his constitutional claims to the Montana Supreme Court so as to give it a fair opportunity to apply federal law to the facts.  *See Anderson v. Harless*, 459 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270, 276-78 (1971).

Cumulative error warrants habeas relief only where the errors have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  Such "infection" occurs where the combined effect of the errors had a "substantial and injurious effect or influence on the jury's verdict."  *Brecht*, 507 U.S. at 637 (internal quotations omitted)

Here, Petitioner has shown no errors, whether exhausted or not.  Thus, there is no "substantial and injurious effect or influence on the jury's verdict" which would warrant habeas relief for cumulative error.  This claim is denied.

## V.    Conclusion

Based on the foregoing, this Court finds that the state courts' rejection of Petitioner's claims were neither contrary to nor involved an unreasonable application of clearly established constitutional law as determined by the United States Supreme Court, nor an unreasonable determination of the facts in light of

the evidence that was presented in the state court proceedings.  Thus, habeas relief

is not warranted on any of these claims.

## VI.    Certificate of Appealability

A petitioner seeking post-conviction relief under section 2254 may appeal a

district court's dismissal of his federal habeas petition only after obtaining a

certificate of appealability (COA) from a district or circuit judge.  A COA may

issue only where a petitioner has made "a substantial showing of the denial of a

constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  A petitioner satisfies this

standard "by demonstrating that jurists of reason could disagree with the district

court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further."

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

This Court concludes that Petitioner is not entitled to a COA because he has

not demonstrated that jurists of reason could disagree with this Court's resolution

of his constitutional claims or could conclude that any issue presented deserves

encouragement to proceed further.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Petitioner's Petition for Writ of Habeas Corpus, Doc. 1, is **DENIED**.

2.  Any appeal taken by Petitioner of this matter would not be taken in good

faith as he fails to make a substantial showing of the denial of a

constitutional right.  Accordingly, a certificate of appealability is

**DENIED**.

The District Court Executive is directed to enter this Order and Judgment

accordingly, furnish copies to the parties, and **CLOSE** the file.

DATED March 8, 2022.

THOMAS O. RICE
United States District Judge

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 27